UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| LAWRENCE A. ROSENDAHL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 05-5-B-K |
| | ) | |
| DIANA M. BRANGWYNNE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF DECISION[1]

This diversity action arises from a May 29, 2003, motor vehicle accident in which the defendant pulled her Subaru Outback into the path of the plaintiff's Honda Nighthawk motorcycle, which act resulted in a collision and personal injury to the plaintiff. The defendant has designated an accident reconstruction expert who would opine that the accident was primarily caused by the plaintiff's negligent positioning of his motorcycle on the roadway prior to the accident, so as to prevent the defendant from being able to see the plaintiff prior to pulling into his path. The plaintiff has designated a rebuttal expert, but has also moved *in limine* to exclude the defendant's expert's causation opinion on the basis that it is not derived from an application of the empirical method. The defendant has opposed the motion to exclude and has also moved *in limine* to exclude the plaintiff's rebuttal expert on the ground that the rebuttal expert was not timely disclosed. I grant the plaintiff's motion to exclude to the extent it concerns the defense expert's opinion concerning the plaintiff's alleged deviation from any standard of safe

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to have United States Magistrate Judge Margaret J. Kravchuk conduct all proceedings in this case, including trial, and to order entry of judgment.

motorcycle operation under the circumstances. I also deny the defendant's motion to exclude any expert testimony by the plaintiff's rebuttal expert.

## Federal Rule of Evidence 702

> Pursuant to Rule 702 of the Federal Rules of Evidence:
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In Daubert v. Merrell Dow Pharms, Inc., 509 U.S. 579 (1993), the Supreme Court assigned to federal judges the gate keeping role of screening from introduction in evidence expert testimony that, although relevant, is nevertheless based on unreliable scientific methodologies. Id. at 597. In General Elec. Co. v. Joiner, 522 U.S. 136 (1997), the Supreme Court explained that a judge exercising this duty must evaluate whether the challenged expert testimony is based on reliable scientific principles and methodologies in order to ensure that expert opinions are not "connected to existing data only by the ipse dixit of the expert." Id. at 146. The latest Supreme Court pronouncement on Rule 702, Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999), extended the gate keeping obligation to all manner of expert testimony that would purport to introduce specialized knowledge or opinion, whether such knowledge or opinion might properly be classified as "scientific" or not. Id. at 147-48. The Kumho Court reiterated that the gate keeping function is "a flexible one" that "depends upon the particular circumstances of the particular case at issue." Id. at 150; see also Daubert, 509 U.S. at 591, 594. It is the proponent of the challenged evidence who carries the burden of proof. That burden is not to prove that his or her expert's opinion or conclusion is correct, but that "the expert's conclusion has been arrived at in a

scientifically sound and methodologically reliable fashion." Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co., 161 F.3d 77, 85 (1st Cir. 1998).

### The Accident

The plaintiff describes the circumstances leading to the accident as follows:

> On May 29, 2003, Plaintiff was riding his motorcycle easterly on Hogan Road in Bangor, Maine.  Hogan Road is a four-lane road, two lanes in an easterly direction, and two westerly.  In front of him in the right-hand eastbound lane was a pickup truck operated by Douglas Ouellette, which slowed and signaled a right turn into the K-Mart parking lot ahead.  Plaintiff turned left into the inner eastbound lane and passed the turning truck. Defendant, exiting the parking lot with the intention of crossing the two eastbound lanes to turn left onto the westbound lanes, apparently didn't see the Plaintiff's motorcycle and crossed in front of the turning pickup truck into Plaintiff's lane of travel, resulting in a collision between her vehicle and Plaintiff's motorcycle and causing ensuing significant personal injury to the Plaintiff.

(Mot. in Limine to Exclude Testimony of Bruce F. McNally at 1, Docket No. 12.)  The defendant does not take issue with this characterization in her opposition memorandum and her expert's description of the accident is essentially the same. (See Accident Reconstruction Report at 2-3, Docket No. 12, Elec. Attach. 3.)

### The Plaintiff's Motion *in Limine* (Docket No. 12)

The defendant's expert, Bruce McNally, is a trained, certified and experienced "traffic accident reconstructionist." (See Resume of Bruce F. McNally, Docket No. 12, Elec. Attach. 2.) On or about June 1, 2005, he prepared a report that offered his analysis of the Rosendahl-Brangwynne accident that is the subject of this lawsuit.  (See Accident Reconstruction Report at 1.)  Among other facts considered by Mr. McNally was a statement given by the defendant that she did not see the plaintiff or his motorcycle prior to pulling onto Hogan Road or prior to impact. (Id. at 3.)  In addition, Mr. McNally considered a statement provided by the plaintiff that he was "pretty close" to the rear of the pickup truck he was following just prior to the accident.

(Id.) Mr. McNally also considered witness statements provided by Douglas Ouellette, the pickup truck driver, and by Joshua Ramos, a motorist who was exiting the K-Mart parking lot and was positioned to the rear and right of the defendant's Subaru. According to Ouellette, he observed the plaintiff in his rearview mirror before he turned into the K-Mart parking lot and also observed the plaintiff as he pulled around the pickup truck to continue down Hogan Road. (Id. at 4.) According to Ramos, he observed the plaintiff and his motorcycle traveling beside (i.e., to the left of) a "large white SUV" that was pulling into the K-Mart parking lot. (Id.) Ramos indicated that he observed the motorcycle prior to the collision. (Id.) Mr. McNally has visited the scene of the accident and has observed, among other things, that there are "no significant physical obstructions along the sides of the roadway that would tend to limit visibility in the area of the collision." (Id. at 5.) Based on measurements taken at the scene, Mr. McNally has prepared a scale diagram of the accident scene. (Id.) He has also collected a number of digital photographs of the scene and the Nightwing motorcycle. (Id.) In the "collision analysis" section of his report, Mr. McNally reasons that because of the best estimates available of the speeds, distances and angles of the various vehicles on the scene, he would opine that the defendant's representation that she did not see the plaintiff prior to the accident is credible because it is most likely the case that the relative positioning of the motorcycle, the SUV/truck and her vehicle made it impossible for her to see the motorcycle until "just moments prior to arriving at the point of impact" and that "[t]he same would hold true of the operator of the motorcycle, whose visibility . . . would most likely have been blocked until the nose of the Subaru traveled past the turning pickup truck." (Id. at 7.) Additionally, Mr. McNally reasons that the collision was primarily caused by the obstruction presented by the SUV/truck and that the obstruction was in part caused by the plaintiff's "chosen driving strategy." (Id.) In Mr. McNally's view, "[a]n

experienced, prudent motorcyclist would have been able to recognize the dangers . . . and would have chosen a safer lane position while approaching the intersection."  In support of this position, Mr. McNally observes that the Motorcycle Safety Foundation, whose teaching curriculum is, according to Mr. McNally, "the basis for the rider-training program in Maine and most other states," emphasizes "the importance of a rider making himself conspicuous to other motorists" and that the primary method of doing so involves positioning a motorcycle to minimize "the shielding effect that other vehicles have on a small profile vehicle."  (Id. at 8.)  Thus, in effect, the defendant would use Mr. McNally's testimony to support a comparative negligence argument that the plaintiff's poor driving strategy was the primary cause of the accident and his injuries.  (Id.)

The plaintiff argues that Mr. McNally's causation opinion must be excluded from trial because he lacks expertise to provide an opinion on proper and safe motorcycle operation.  (Mot. in Limine to Exclude Testimony of Bruce F. McNally at 2-3.)  As the plaintiff correctly observes, "[t]here is nothing in Mr. McNally's resume to suggest that his expertise extends to knowledge concerning proper or lawful motorcycle operation."  (Id. at 3.)  In addition, the plaintiff takes issue with the alleged basis for this opinion, arguing that the only basis for it lies in the plaintiff's ambiguous testimony that he was "pretty close" to the truck when it signaled to turn into the K-Mart parking lot.  (Id. at 4.)  Because of this questionable basis for opinion, the plaintiff contends it should be excluded from trial for being more speculative than empirical.  (Id. at 4-5.)  Finally, the plaintiff asserts that the opinion is not relevant because members of the jury have the innate capacity to decide the issues of whether the defendant exercised due care and the existence of comparative negligence without the "assistance" Mr. McNally is offering.  (Id. at 5-6.)

5

The defendant responds that Mr. McNally is qualified to offer an opinion concerning safe motorcycle operation because his accident reconstruction expertise, including a focus in motorcycle-specific studies such as "motorcycle sliding coefficient of friction tests" and "motorcycle speed estimates," his attendance at a seminar on motorcycle speed estimation, his attendance at conferences on motorcycle crash tests and brake testing and his presentation on like topics provided Mr. McNally with ample expertise on motorcycle safety. (Def.'s Opp'n to Pl.'s Mot. in Limine at 5, Docket No. 15.) Contrary to the defendant's assurances, Mr. McNally's expertise on motorcycle operational safety is not revealed by these several entries in his resume concerning accident reconstruction and the physics that pertain to motorcycles when they are involved in accidents. If these various seminars and conferences truly included operational safety components it would have been appropriate for the defendant to submit an affidavit from Mr. McNally containing a statement to that effect. As the existing record currently stands, the defendant is essentially asking the court to assume that expertise in the art of reconstructing an accident involving a motorcycle necessarily confers expertise in the safe handling and operation of motorcycles. I decline to draw this inference in favor of the defendant who, as the party with the burden of proof, should have informed the court of Mr. McNally's training and knowledge in the area of safe motorcycle operation, assuming he has obtained such training over the course of his career as the defendant maintains. Accordingly, I will exclude from trial any testimony offered by Mr. McNally to the effect that the plaintiff's driving strategy deviated from an alleged standard of care pertaining to safe motorcycle operation under the circumstances or that such a deviation was the primary cause of the accident. However, I do not preclude the defendant from eliciting fact testimony from Mr. McNally in his capacity as an investigator in order to describe the accident scene for the trier of fact or in his capacity as an accident reconstruction expert to

the limited extent that he would opine that there is a physical explanation for the defendant's statement that she did not see the plaintiff or his motorcycle when she pulled into his right of way. I have in mind here those representations found in Mr. McNally's report that concern the geometry of the accident scene and the physical characteristics of the vehicles involved, including their possible speed, acceleration and location in the three dimensions of space and the fourth dimension of time. With regard to this aspect of Mr. McNally's report, I conclude that Mr. McNally's expertise is beyond dispute and that his methodology is sufficiently empirical to provide some meaningful assistance to the trier of fact and to be tested by the time-honored tradition of cross-examination.

### The Defendant's Motion *in Limine* (Docket No. 13)

The defendant seeks to exclude any testimony by the plaintiff's designated expert on the ground that the expert was not disclosed in a timely manner. The parties' representations reflects that the plaintiff designated one Wade Bartlett on June 24, 2005, as a rebuttal expert after the defendant designated Mr. McNally as her expert. Although the Court's scheduling order did not prescribe a deadline for designation of rebuttal witnesses, Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure permits a party to designate a rebuttal expert witness within 30 days after the disclosure made by an adverse party. Based on the plaintiff's representation and the defendant's failure to contradict that Mr. McNally was designated on May 26, 2005, I will allow this designation as a timely designation under the Rules, with the understanding that testimony will be elicited from Mr. Bartlett "solely to contradict or rebut" the testimony that I have permitted Mr. McNally to offer. Fed. R. Civ. P. 26(a)(2)(C). Thus to the extent he is designated to opine about safe motorcycle operation and plaintiff's alleged deviation from a standard of care, he would be excluded.

## Conclusion

The plaintiff's motion in limine (Docket No. 12) is **GRANTED**, subject to the parameters set forth above, and the defendant's motion in limine (Docket No. 13) is **DENIED**.

*So Ordered.*

Dated August 22, 2005                    /s/ Margaret J. Kravchuk
                                         U.S. Magistrate Judge